GIBLER *v.* HICKOK.

1. FRAUDS, STATUTE OF—AGREEMENT TO PAY COMMISSION—SUFFICIENCY OF MEMORANDA.

A written instrument signed by defendants authorizing plaintiff, a real estate broker, to accept a deposit and execute a binding contract for the exchange of their farm for city property, fixing the price and agreeing to pay a certain commission thereon, *held*, sufficient to satisfy the statute of frauds.

2. BROKERS — COMMISSIONS — LIABILITY FOR COMMISSION EARNED MAY NOT BE EVADED BY REFUSAL TO PERFORM.

Where an exchange of property satisfactory to defendant was arranged for by a real estate broker, the agreed commission was earned, and defendant could not evade liability therefor by refusing to carry out the contract, thus rendering it impossible for plaintiff to realize from the "proceeds" of the sale, as provided for therein.

Error to Hillsdale; Chester (Guy M.), J. Submitted October 16, 1923. (Docket No. 113.) Decided December 19, 1923.

Assumpsit in justice's court by Cloyd E. Gibler against Robert Hickok and another for a commission on an exchange of real property. There was judgment for defendants, and plaintiff appealed to the circuit court. Judgment for defendants on a directed verdict. Plaintiff brings error. Reversed.

*Merton Fitzpatrick,* for appellant.

*W. D. Grommon,* for appellees.

SHARPE, J. Defendants owned a farm in Hillsdale county which they desired to exchange for city prop-

On what constitutes a listing of property or employment of broker within a contract promising a commission therefor in case the property is withdrawn or no sale made, see note in 24 L. R. A. (N. S.) 562.

erty. They so wrote plaintiff. A personal interview followed, in which plaintiff's agent, Mr. Gardner, called their attention to a city property owned by Mr. and Mrs. Ellison. The defendants looked over this property and Gardner soon after took the Ellisons to defendants' farm. Terms of exchange were agreed upon. Gardner then prepared a written instrument, using a listing form therefor. In it defendants appointed plaintiff "exclusive agent to make sale" of defendants' property and agreed to exchange it for the Ellison property on terms stated therein. The price of the farm was stated to be $8,000. The writing also contained the following:

"You are hereby authorized to accept a deposit to be applied on the purchase price and execute a binding contract of sale on my behalf. In case the above property is sold or disposed of within the time specified, I agree to make the purchaser a good and sufficient warranty deed for the same, and to furnish a complete abstract of the title if required. It is further agreed that you shall have and may retain from the proceeds arising from the sale three per cent. from the above price and two per cent. of all the consideration for which said property is sold within said time through me or any other person, then in that case I promise to pay two per cent. on the whole amount for which the property may be sold. This contract to continue until all papers are closed for this deal and everything is settled in full."

This was signed by defendants. A writing similar in import was prepared and signed by Mr. and Mrs. Ellison. On the back of each of them, but unsigned, appeared the words, "Papers to be drawn on Saturday, January 7th, 1922." On January 7th, Mr. Hickok and Mr. Ellison came to plaintiff's office. After conferring together for some time, Mr. Hickok concluded not to go on with the deal. Ellison was ready and willing to carry it out. Plaintiff brought suit for $160, claiming he was entitled thereto as commission.

The trial court instructed the jury that as the "sale was never consummated there were no proceeds arising from the sale from which the commission was to be made;" that the plaintiff could not recover, and directed a verdict accordingly. Plaintiff reviews the judgment entered by writ of error.

We feel constrained to hold that the court erred in his direction to the jury and that a verdict should have been directed for the plaintiff. When the plaintiff had arranged for an exchange of property with the Ellisons, satisfactory to defendants, he had earned his commission. The statute requiring such contracts to be in writing, alone, prevented its recovery. The writing which defendants signed fixed the amount and satisfied the statute. Under the authority conferred, plaintiff could have executed a contract obligating both parties to perform. He could not, however, have enforced performance on the part of either. There was, therefore, no way in which he could have secured his commission out of any moneys or property to which defendants would have been entitled had performance been had.

The rule is thus stated in 31 Cyc. p. 1509:

"The terms of the employment may be such that the right to compensation is dependent, not merely upon the agent's finding a person who enters into a specified contract with the principal, but also upon the carrying out of that contract by the parties thereto according to its terms, although as to this it is to be observed that as a rule the failure, refusal, or inability of either the principal or the third person to carry out the contract entered into by them does not defeat the agent's right to compensation for negotiating that contract; nor is such right defeated by the fact that the principal and the third person subsequently modify, rescind, or cancel the contract by mutual consent."

See note thereto, in which the authorities are cited and reviewed.

A question quite similar was presented in *Lafferty* v. *Lorimer*, 86 Mich. 591. Defendants had agreed to pay plaintiff twenty cents per ton "for all orders taken and delivered at our office, said coal to be delivered as ordered." Defendants declined to fill certain orders taken by plaintiff, and plaintiff sued for his commission on such sales. The court held:

"We think it was the plain intent of this contract that plaintiff was to be paid a commission upon the coal delivered upon these orders, and upon any orders which defendants, by their own fault, refused or neglected to fill. There is no evidence in the record upon which to base such neglect or refusal."

Defendants' failure, without just cause, so far as plaintiff is concerned, to complete the exchange of property could not relieve them from the payment to plaintiff of the commission agreed upon.

The judgment is reversed, with costs to appellant, and a new trial ordered.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.